Margaret K. McMann *vs.* Elizabeth B. Murphy & others.

Middlesex.    March 8, 1927.— May 18, 1927.

Present: Rugg, C.J., Braley, Pierce, Carroll, & Wait, JJ.

*Probate Court,* Jury issues. *Unsound Mind. Undue Influence. Will,* Validity.

One of five sisters by her will gave all her estate, except enough to provide for a cemetery lot, to another of the sisters and named her executrix. The other three sisters opposed proof of the will, and, in support of a motion for the framing of issues as to the soundness of mind of the testatrix and as to alleged undue influence exerted upon her by the petitioner, offered in substance to show that at a time when the mental and physical powers of the alleged testatrix were weakened by disease, the petitioner, who previously had been estranged from her, discovered the amount of her property, offered her a home and kept "hounding" her to make a will; and that the alleged testatrix placed her bank books in the care of one of the respondents. Less than a month after the making of the will, the testatrix died. The petitioner contended that some of the evidence offered comprised declarations by the petitioner which under the rule in *Shailer* v. *Bumstead,* 99 Mass. 112, 128, were not admissible. The motion was allowed. *Held,* that

(1) The rule in *Shailer* v. *Bumstead* was not applicable because the will gave practically the entire estate to the person alleged to have exercised undue influence, other legacies being for purposes for which the executrix under G. L. c. 206, §§ 14, 15, might make expenditures irrespective of the will, so that the admissions by the petitioner could not prejudice material rights of remaining legatees;

(2) Besides the admissions by the petitioner, there was ample evidence offered to justify the granting of the motion.

PETITION, filed in the Probate Court for the county of Middlesex on September 16, 1925, for proof of the will of Mary A. Norton, late of Wakefield.

The petition was opposed by three sisters of the alleged testatrix and of the petitioner, who moved for the framing of issues to be tried by a jury. The motion was heard by *Leggat,* J. No stenographer was appointed nor was any testimony taken. Counsel for respondents presented an offer of proof in typewritten form and made some additional statements orally. Upon the offer as presented the judge allowed the motion and framed the following issues for trial by jury.

"Second Issue: Was said Mary A. Norton of sound mind at the time of the execution of the instrument which is now propounded as her last will?

"Third Issue: Was the instrument propounded for probate as the last will of said Mary A. Norton procured to be made by the fraud or undue influence of Margaret K. McMann exercised upon the said Mary A. Norton?"

The petitioner appealed. Material facts are stated in the opinion.

*G. M. Poland,* (*E. K. Bowser* with him,) for the petitioner.

*L. Hill,* (*F. P. Hanford* with him,) for the respondents.

CARROLL, J. This is an appeal from a decree of the Probate Court allowing a motion to frame issues for a trial by jury in a contested will case. The issues were the soundness of mind of the testatrix and the fraud and undue influence of Margaret K. McMann. The motion was allowed upon an offer of proof by the contestants.

The principles which should govern the Probate Court in deciding a motion for a jury trial in a contested will case were stated in *Fuller* v. *Sylvia,* 240 Mass. 49. It is to be presumed that the judge, in deciding as he did, was governed by these principles. *Clark* v. *McNeil,* 246 Mass. 250, 256. *Burroughs* v. *White,* 246 Mass. 258. *Old Colony Trust Co.* v. *Pepper,* 248 Mass. 263. *Old Colony Trust Co.* v. *Spaulding,* 250 Mass. 400. *Crockett* v. *Snow,* 258 Mass. 133.

The judge in the exercise of a sound discretion might have refused to frame the issues; but, having granted the motion,

the question is before us on appeal substantially as it was before the Probate Court. The order of the judge will not ordinarily be reversed, if supported by statements in the offer of proof. *Old Colony Trust Co.* v. *Pepper, supra.*

The offer of proof showed that the testatrix executed her will on August 12, 1925. After providing for the erection of a monument on the grave of her husband in St. Patrick's Cemetery, Stoneham, and for the care of "my lots in said Cemetery," she gave the residue of her estate to her sister, Margaret K. McMann, and named her executrix. At the time of her death the testatrix, Mary A. Norton, left surviving her four sisters. The testatrix died September 7, 1925. In May of that year she had a shock. Earlier in this month she had "a bad spell . . . She acted queer." In August following she had a second shock as a result of which she became partly paralyzed "and her mind affected." After the death of Mrs. Norton's husband in January, 1925, "she did not seem to know what to do or where to turn." At the time she suffered the shock in May, the "doctor stated that the trouble was all in the head." In August after she received the second shock, at times she failed to recognize her sister Mrs. Kelly. She was constantly calling for water saying "more drink, more drink." "She would keep muttering, acted queer, kept saying 'Scratch, scratch, water, water.'"

Prior to January, 1925, the testatrix was not on friendly terms with her sister Mrs. McMann. They had not spoken to each other more than three or four times during a period of twenty-seven years. The testatrix often said she disliked Mrs. McMann and "would have nothing to do with her." When they met, they quarrelled. During all this time, and up to the time of the testatrix's death, the respondents were on friendly terms with her. It also appeared that in January, 1925, when the testatrix was in bed, the daughter of Mrs. McMann found the key of the drawer where the testatrix had placed her bank books. It was discovered that Mrs. Norton had about $11,500 in the bank. Shortly after this Mrs. McMann "told the testatrix that she could have a home at the petitioner's house." The testatrix, before her

last illness, stated to her sister, Mrs. Murphy, that Mrs. McMann was "hounding her to make a will, that all she heard was will, will, will." Later she brought her bank books to Mrs. Murphy and told her they would be safer there, and a little later took them to Mrs. Boardman's for safe keeping, where they remained until after her death. In January the petitioner told Mrs. Murphy that she (the petitioner) "would be sporting a good auto out of the testatrix' money."

We see no reason to disturb the discretion exercised by the Probate Court. There was enough in the offer of proof to support the ruling of the judge and there is no reversible error of law in ordering both issues framed for a trial by jury. *Crockett* v. *Snow, supra,* and cases cited.

The appellant relies on the rule in *Shailer* v. *Bumstead,* 99 Mass. 112, 128, to prove that the declarations of Mrs. McMann were not admissible to show undue influence. Mrs. McMann was the sole legatee, with the exception of a provision in the will for the erection of a monument and care of the grave. We assume that this monument was to be erected upon the lot where the testatrix was to be buried with her husband. The reason of the rule, that admissions of one legatee not in privity with another shall not be allowed to defeat the rights of that person, as was stated in *Becker* v. *Becker,* 238 Mass. 362, 366, 367, ceases when the declarant is the sole beneficiary, or when the interest of the remaining legatees is merely nominal. By G. L. c. 206, §§ 14, 15, an executor may pay a reasonable amount for the perpetual care of a burial lot where the deceased is buried, and a reasonable amount for a monument. The admissions of Mrs. McMann could not prejudice materially the rights of the remaining legatees. The rule in *Shailer* y. *Bumstead, supra,* therefore, is not applicable.

Furthermore, independently of the admissions of Mrs. McMann, there was evidence of her undue influence. It was shown by the change in the relations of the testatrix with the appellant, by the testatrix's conduct toward her sisters who were on friendly terms with her, and all the other circumstances disclosed in the offer of proof. Undue influ-

ence may be exercised in secret and indirect ways. According to the offer of proof, the appellant had the opportunity and disposition to substitute her will for that of the testatrix, and the testatrix was in a condition to be susceptible to this influence. *Raposa* v. *Oliveira,* 247 Mass. 188, 190.

*Order for the framing of jury issues affirmed.*